UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSE R. OCASIO,

                          Plaintiff,

v.                                                    6:20-CV-1355 (GTS/ATB)

MOHAWK VALLEY
COMMUNITY COLLEGE,

                          Defendant.
_____

APPEARANCES:                              OF COUNSEL:

JAMES D. HARTT, ATTORNEY AT LAW           JAMES D. HARTT, ESQ.
   Counsel for Plaintiff
6 N. Main Street, Suite 200F
Fairport, NY 14450

THE LAW FIRM OF FRANK W. MILLER          CHARLES C. SPAGNOLI, ESQ.
   Counsel for Defendant
6575 Kirkville Road
East Syracuse, NY 13057

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this employment discrimination action filed by Jose R.

Ocasio ("Plaintiff") against Mohawk Valley Community College ("Defendant" or "MVCC"), is

Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed.

R. Civ. P. 12(b)(6).  (Dkt. No. 6.)  For the reasons set forth below, Defendant's motion is

granted; however, Plaintiff is granted leave to file a motion to amend before dismissal of his

action with prejudice.

# I.      RELEVANT BACKGROUND

## A.      Plaintiff's Complaint

The following facts are taken from Plaintiff's Complaint and are assumed true for the purpose of deciding the pending motion.  Liberally construed, Plaintiff's Complaint alleges as follows: (1) a Hispanic male, Plaintiff, was employed by Defendant as a welding instructor in Utica and Rome, New York; (2) on or about January 27, 2017, Plaintiff began receiving sexually explicit text messages and phone calls ("communications") on his personal cell phone during business and non-business hours;[1] (3) communications were sent to Plaintiff on the premise that Plaintiff was a female who had sexually solicited them; (4) specifically, Plaintiff's cell phone number had been provided to numerous websites that had then solicited the communications; (5) after receiving the communications, in early February 2017, Plaintiff reported the unwanted communications to MVCC's Department of Public Safety; (6) based on "credible evidence," Plaintiff believes two individuals are responsible for his receipt of the communications, specifically Michael Sorrentino ("Sorrentino")[2] and Benjamin McCrary ("McCrary");[3] (7) at some point, Plaintiff learned that an MVCC student with the last name of "Morrison" ("Morrison") had also experienced similar unsolicited communications; (8) Plaintiff suspects Sorrentino was responsible for the communications because, at an earlier point in time while Sorrentino was employed by MVCC, Plaintiff and Morrison had served as instrumental witnesses in a safety-related issue in which MVCC had investigated Sorrentino; (9) presumably,

---

[1]      The communications included content in the form of written and photographic pornography.

[2]      At some point, MVCC employed Sorrentino as a professor.

[3]      McCrary was formerly enrolled as a student at MVCC and had taken a course taught by Plaintiff.

as a result from Sorrentino's role in the safety-related issue at MVCC, Sorrentino's employment was terminated in December 2016; (10) Plaintiff's role as a witness had caused Sorrentino to retaliate against him in the form of directing unsolicited communications to Plaintiff's cell phone; (11) New York State Police's Computer Crimes Division ("NYS Police") began investigating the origin of the communications being sent to Plaintiff's cell phone; (12) the NYS Police identified Sorrentino and McCrary as the individuals responsible for the communications being sent to Plaintiff's cell phone and shared its findings with MVCC; (13) on September 5, 2017, Plaintiff inquired of MVCC about enrolling in a training seminar in the form of a Professional Opportunity Grant ("training") titled "CWI funding;" (14) MVCC denied Plaintiff access to the training and instead gave a newly hired and lesser qualified non-Hispanic instructor approval to attend the training; (15) MVCC's choice of not providing Plaintiff with the training constituted disparate treatment that had a discriminatory effect which caused Plaintiff to suffer from significant emotional distress; (16) in an effort to stop receiving the communications, Plaintiff changed his cell phone number; (17) despite changing his cell phone number, in April 2018, Plaintiff received additional unwanted communications; (18) at some point, Plaintiff discovered a fictitious online profile had been made using Plaintiff's personal information and posing as a female who was soliciting the sexually explicit communications;[4] (19) Plaintiff reported the additional communications and fictitious online profile to MVCC; (20) on or about April or May 2018, Plaintiff learned that McCrary had been harassing an MVCC student with the last name of "Miller" ("Miller") by creating and posting a computer-generated depiction of Miller on Facebook engaged in a sexual act; (21) over the course of the year preceding the filing of his Complaint, Defendant continued to deny Plaintiff access to the training, despite his

---

[4]      Plaintiff did not provide the name of the website where the fictitious profile existed.

numerous request for it; (22) Defendant's pattern of condoning sexual harassment, retaliating against Plaintiff for reporting the sexual harassment, and racially discriminating against Plaintiff caused him to submit his employment resignation which became effective on August 5, 2018; (23) specifically, Defendant created a toxic work environment with conditions that no person could have been expected to endure; (24) on September 17, 2018, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYSDHR"), charging Defendant with an unlawful employment discriminatory practice based on race, retaliation, and gender under New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL");[5] (25) on March 1, 2019, the NYSDHR issued its Determination After Investigation ("Report") in which it had found probable cause "to believe that [Defendant] has engaged in . . . the unlawful discriminatory practice [Plaintiff] complained of;" (26) in its Report, the NYSDHR determined that (i) despite Defendant and NYS Police's lengthy investigation into the matter, the investigation had uncovered only some circumstantial evidence connecting Sorrentino and McCrary to the communications, (ii) Defendant had failed to act by permitting Plaintiff to continue to receive unwanted communications after his initial reporting of them and presenting no evidence that it had enforced its own Sexual Harassment Policy, and (iii) with respect to Plaintiff's race discrimination allegations, the one-year statute of limitations had lapsed because he had filed his NYSDHR complaint on September 17, 2018—more than one year after his last request on September 11, 2017 to attend  the training; (27) on August 4, 2020, the EEOC issued Plaintiff a right-to-sue letter.  (Dkt. No. 1, Attach. 1-2 [Pl.'s Compl.].)

Based on these allegations, Plaintiff asserts seven claims: (1) a claim of employment

---

[5]    In addition, Plaintiff "dual-filed" his complaint with the United States Equal Employment Opportunity Commission ("EEOC").  The Court notes the date of Plaintiff's EEOC filing is unclear.

discrimination based on race under 42 U.S.C. § 2000e ("Title VII"); (2) a claim of employment

discrimination based on race under the NYSHRL; (3) a claim of hostile work environment based

on sexual harassment under Title VII; (4) a claim of hostile work environment based on sexual

harassment under the NYSHRL; (5) a claim of retaliation under the NYSHRL; (6) a claim of

retaliation under Title VII; and (7) a claim of constructive discharge.[6]  Familiarity with these

claims and the factual allegations supporting them in Plaintiff's Complaint is assumed in this

Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

> **B.**     **Parties' Briefing on Defendant's Motion**

In support of its motion to dismiss for lack of subject-matter jurisdiction and failure to

state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), Defendant makes

five arguments:[7] (1) Plaintiff's race discrimination claim under Title VII must be dismissed for

two reasons: (a) he failed to exhaust his administrative remedies through the untimely filing of

his EEOC charge, and (b) his denial of training does not constitute a material adverse

employment action; (2) Plaintiff's race discrimination claim under NYSHRL must be dismissed,

again, because his denial of training does not constitute a material adverse employment action;

(3) Plaintiff's hostile work environment claim under Title VII must be dismissed for four

reasons: (a) he failed to exhaust his administrative remedies through the untimely filing of his

EEOC charge, (b) no hostile work environment existed because he failed to allege any conduct

---

[6]      The Court notes Plaintiff's concession that his constructive discharge claim is "not a separate cause of action in and of itself . . . ."  Therefore, the Court will dismiss this claim without prejudice as voluntarily withdrawn under Fed. R. Civ. P. 41(a)(1)(A)(i).  (Dkt. No. 16, at 17 [Pl.'s Opp'n Mem. of Law.])

[7]      The Court notes that, in its memorandum of law, Defendant has not organized its arguments by Plaintiff's claims.  Instead, Defendant organized its arguments by Sorrentino and McCrary's alleged behavior, and the alleged denial of training.  Because this organization frustrates the Court's analysis of Plaintiff's claims, the Court has organized its analysis based on Defendant's arguments to each claim.

that is severe or pervasive, (c) Defendant had no control over Sorrentino or McCrary during their alleged conduct, had no proof serving as a basis to discipline McCrary, and had no authority to seize Sorrentino's or McCrary's personal computers or cell phones, (d) despite alerting NYS Police and conducting an investigation, little circumstantial evidence connecting Sorrentino or McCrary to the communication that Plaintiff alleges; (4) Plaintiff's hostile work environment claim under NYSHRL must be dismissed for five reasons: (a) again, Defendant had no control over Sorrentino or McCrary during their alleged conduct, had no proof serving as a basis to discipline McCrary, and had no authority to seize Sorrentino's or McCrary's personal computers or cell phones, (b) cannot be held liable for Sorrentino's alleged conduct when he had no employment relationship with Defendant at the time of the communication Plaintiff alleges, and thus, Defendant had no obligations under Title VII or NYSHRL, (c) Defendant cannot be held liable given that, when it became aware of the communications, it took appropriate actions by conducting a thorough investigation and alerting the NYS Police, (d) Plaintiff did not suffer from an abusive or hostile work environment at *work* given that the alleged communications had been transmitted to his personal cellphone which he *chose* to bring to work, and (e) the alleged sexual harassment was not motivated by Plaintiff's sex; (5) Plaintiff's retaliation claims under Title VII and the NYSHRL must be dismissed for two reasons: (a) Plaintiff's instances of reporting to MVCC about the communication he had received did not constitute protected activity because he admits the communication was not sent on the basis of his sex, (b) even if his instance of reporting the communications to MVCC constituted protected activity, he has not alleged any facts plausibly suggesting that the training denials were retaliation for reporting the communication; (6) in the event that the Court dismisses Plaintiff's Title VII claims, the Court should exercise its discretion to dismiss the remaining state law claims because the Court would

6

be without subject-matter jurisdiction to adjudicate them.  (*See generally* Dkt. No. 6, Attach. 2 [Def.'s Mem. of Law].)

Generally, in his opposition memorandum of law, Plaintiff asserts six arguments: (1) with respect to all of the Title VII claims, Plaintiff has exhausted his administrative remedies because Defendant continued to discriminate against him by denying him training after September 2017, and thus, the training denials occurred within the EEOC's 300-day and New York's one-year statute of limitations; (2) the Complaint states a claim under Title VII and NYSHRL for a hostile work environment because Defendant failed to take appropriate remedial action to stop the communications by not enforcing its sexual harassment policy; [8] (3) Defendant asks the Court to make factual findings and to weigh evidence at an inappropriate stage of litigation; (4) the Complaint states a claim under Title VII and the NYSHRL for race discrimination for six reasons: (a) the denial of training was directly related to his race, (b) race discrimination led to his constructive discharge, (c) Defendant altered the terms and conditions of Plaintiff's employment, (d) the denial of training and Plaintiff constructive discharge were adverse employment actions, (e) Defendant only assumes that the denial of training was not materially

---

[8]     The Court notes that, in his opposition memorandum of law, Plaintiff uses the terms "hostile work environment" and "sexual harassment" interchangeably.  (*See generally* Dkt. No. 16.)  Title VII does not specifically prohibit sexual harassment.  CHRISTINE J. BLACK & WILSON C. FREEMAN, CONG. RESEARCH SERV., RL 45155, SEXUAL HARASSMENT AND TITLE VII: SELECTED LEGAL ISSUES (2018), https://fas.org/sgp/crs/misc/R45155.pdf (visited July 27, 2021).  However, under *Meritor Sav. Bank, FSB v. Vinson,* the Supreme Court recognized sexual that harassment claims are actionable under Title VII.  477 U.S. 57 (1986).  In *Meritor,* the Court held that there are two forms of sexual harassment: (1) *quid pro quo* sexual harassment; and (2) sexual harassment that is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."  477 U.S. at 67 (internal quotation marks omitted).  Here, Plaintiff is alleging that, through Defendant's failure to stop the sexual harassment by McCrary and Sorrentino, he was exposed to a hostile work environment.  Thus, for the purposes of this Decision and Order, the Court will refer to this claim as a hostile work environment claim.

adverse to his job, (f) Defendant gave the CWI Funding to a non-Hispanic man who had not complained about sexual harassment and a hostile work environment; (5) the Complaint states a claim for retaliation under Title VII and the NYSHRL for five reasons: (a) Plaintiff participated in a protected activity when he reported the communications to Defendant, (b) Defendant knew of the protected activity, (c) Plaintiff suffered an adverse employment action when Defendant denied him an opportunity to attend the training he had requested, (d) Defendant incorrectly assumes that the training was not materially adverse to Plaintiff's job, and (e) there was a causal connection between the protected activity and the adverse employment action; and (6) although constructive discharge is not a separate cause of action in and of itself, Plaintiff still maintains that he was constructively discharged for purposes of his other claims.  (*See generally* Dkt. No. 16 [Pl.'s Opp'n Mem. of Law].)

Generally, in its reply memorandum of law, Defendant asserts five arguments: (1) the Complaint's Title VII and NYSHRL race discrimination claims must dismissed for three reasons: (a) Plaintiff did not allege facts plausibly suggesting an adverse employment action, (b) he failed to file a timely EEOC charge regarding his September 2017 training denial, and (c) he did not allege facts plausibly suggesting any instances in which Defendant denied him access to training any time after September 2017; (2) the Complaint's Title VII and NYSHRL hostile work environment claims must be dismissed for four reasons: (a) Sorrentino and McCrary's alleged conduct does not impute liability onto Defendant because it did not owe Plaintiff a duty, (b) upon learning of the communication that Plaintiff had received, Defendant acted appropriately by conducting an investigation of it and notifying the NYS Police, (c) Plaintiff did not allege facts plausibly suggesting that the communication he had received was motivated by his sex, (d) a hostile work environment did not exist because he did not allege facts plausibly suggesting the

existence of severe or pervasive conduct; (3) the Complaint's Title VII and NYSHRL retaliation

claims should be dismissed for two reasons: (a) Plaintiff failed to file a timely EEOC charge, and

(b) he did not alleged facts plausibly suggesting that the denial of training was causally related to

the complaints he made to Defendant regarding the received communication; (4) if the Court

dismisses all of the Complaint's Title VII claims, it should decline to exercise pendent

jurisdiction over any remaining state claims brought under the NYSHRL; and (5) regardless of

whether the Court chooses to exercise pendent jurisdiction over any state claims brought under

the NYSHRL, the Court should still dismiss those claims because the Report found that any

claims involving denials of training were time barred by the statute of limitations, and Plaintiff

has elected his remedy under the NYSHRL.[10]  (*See generally* Dkt. No. 17 [Def.'s Reply Memo.

of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de

novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding

---

[10]     Although somewhat related to its prior arguments, Defendant's "election of remedies"
argument is distinct from those arguments and was not asserted in its memorandum in support of
its motion to dismiss.  Because Plaintiff has not had an opportunity to respond to this argument,
the Court will not address it other than to note that it would reject the argument anyway.

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[11]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F.

---

[11]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.).

Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks

and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citations omitted).

Finally, with regard to what documents are considered when a dismissal for failure to state a claim is contemplated, generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[12]

---

[12]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the

B.      **Legal Standards Governing Plaintiff's Claims**

1.      **Title VII of the Civil Rights Act of 1964**

Title VII prohibits an employer from "discriminat[ing] against any individual with

respect to his [or her] compensation, terms, conditions, or privileges of employment, because

of," *inter alia*, "such individual's race, color, religion, sex, or national origin."  42 U.S.C. §

2000e-2(a)(1).  Thus, by definition, "Title VII protects a limited class of persons from

discrimination."  *Kiley v. Am. Soc'y for Prevention of Cruelty to Animals,* 296 F. App'x 107, 109

(2d Cir. 2008) (quoting 42 U.S.C. § 2000e-2[a][1]-[2]).  Only employers can be held liable under

Title VII claims.  *Reynolds v. Barrett,* 685 F.3d 193, 202 (2d Cir. 2012).

Before a plaintiff can bring a private civil action under Title VII, he must satisfy a

jurisdictional prerequisite by filing a charge with the EEOC.  *Morgan v. NYS Att'y Gen.'s*

*Off.,* 11-CV-9389, 2013 WL 491525, at *6 (S.D.N.Y. Feb. 8, 2013) (citing *Chin v. Port Auth. of*

---

complaint, or [4] any matter of which the court can take judicial notice for the factual
background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and
documents incorporated by reference in the complaint. . . .  Where a document is not
incorporated by reference, the court may neverless consider it where the complaint relies heavily
upon its terms and effect, thereby rendering the document 'integral' to the complaint . . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

*New York & New Jersey,* 685 F.3d 135, 146 [2d Cir. 2012] [citing 42 U.S.C. §§ 2000e–

5(e)(1), (f)(1)]).  Claims not filed with the EEOC may be brought in federal court, as long as they

are "reasonably related" to those claims filed with the agency.  *Morgan*, 2013 WL 491525, at *6

(quoting *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 [2d Cir. 1993],

superseded by statute on other grounds as recognized in *Hawkins v. 1115 Legal Serv. Care,* 163

F.3d 684 [2d Cir. 1998]).  A claim is "reasonably related" where the conduct complained of

"would fall within the scope of the EEOC investigation which can reasonably be expected to

grow out of the charge of discrimination."  *Butts,* 990 F.2d at 1402.  When determining whether

a claim is reasonably related to the claims filed with the EEOC, courts should focus "on the

factual allegations made in the EEOC charge itself, describing the discriminatory conduct about

which a plaintiff is grieving," and "whether the complaint filed with the EEOC gave that agency

adequate notice to investigate discrimination on both bases."  *Williams v. New York City Housing

Auth.,* 458 F.3d 67, 70 (2d Cir. 2006) (internal alteration and citation omitted).

### a.    Race Discrimination

To state a discrimination claim under Title VII, a plaintiff must allege four elements: "(1)

[s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3)

[s]he suffered an adverse employment action; and (4) the adverse action took place under

circumstances giving rise to an inference of discrimination."  *Bir v. Pfizer, Inc.*, 510 F. App'x 29,

30 (2d Cir. 2013) (quoting *Reynolds*, 685 F.3d at 202 [internal quotation marks and alteration

omitted]).  "A showing of disparate treatment–that is, a showing that the employer treated

plaintiff less favorably than a similarly situated employee outside his protected group–is a

recognized method of raising an inference of discrimination for purposes of making out a prima

facie case."  *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

14

At the pleadings stage of Title VII discrimination claims, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of Title VII litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [1973]).  Thus, it is not necessary for a plaintiff to plead a prima facie case for discrimination, "because the *McDonnel Douglas* burden shifting standard is 'an evidentiary standard, not a pleading standard.'"  *Barton v. Warren Cnty.*, 19-CV-1061, 2020 WL 4569465, at *5 (N.D.N.Y. Aug. 7, 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 515 [2002]).  Based on *McDonnel Douglas*, a plaintiff will survive a motion to dismiss in a "Title VII discrimination case . . . [if he] . . . plausibly allege[s] that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  A Title VII discrimination complaint satisfies Fed. R. Civ. P. 8(a) if it gives the defendant "fair notice" of the claims, by "indicat[ing] the possibility of discrimination and thus present[ing] a plausible claim for disparate treatment."  *Barton*, 2020 WL 4569465 at *5 (quoting *Marchioli v. Garland Co., Inc.*, 11-CV-0124, 2011 WL 1983350, at *3 [N.D.N.Y. May 20, 2011]).  This pleading burden may be met by the plaintiff if he "allege[s] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Vega*, 801 F.3d at 87 (citing *Littlejohn*, 795 F.3d at 310).

### b.     Hostile Work Environment

To state a hostile work environment claim under Title VII, "a plaintiff must plead facts that would tend to show that the complained conduct: (1) is objectively severe or pervasive–that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates

an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such

an environment because of the plaintiff's sex." *Barton*, 2020 WL 4569465 at *8 (quoting *Patane*

*v. Clark*, 508 F.3d 106, 113 [2d Cir. 2007]).  "To satisfy this standard, a plaintiff must 'produce

enough evidence to show that the workplace [was] permeated with discriminatory intimidation,

ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the

victim's employment.'" *Andersen v. Rochester City Sch. Dist.*, 481 F. App'x 628, 630 (2d Cir.

2012) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 [2d Cir. 2010]).  "This

standard has both objective and subjective components: the conduct complained of must be

severe or pervasive enough that a reasonable person would find it hostile or abusive, and the

victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at

321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 [2d Cir. 2014]).  "Hostile work

environment claims, however, 'are meant to protect individuals from abuse and trauma that is

severe' and 'are not intended to promote or enforce civility, gentility, or even decency.'" *Prindle*

*v. City of Norwich*, 15-CV-1481, 2018 WL 1582429, at *10 (N.D.N.Y. Mar. 27, 2018) (Suddaby,

C.J.) (quoting *Curtis v. DiMaio*, 46 F. Supp.2d 206, 213-14 [E.D.N.Y. 1999], *aff'd*, 205 F.3d

1322 [2d Cir. 2000]).  "As a general rule, incidents must be more than episodic; they must be

sufficiently continuous and concerted in order to be deemed pervasive." *Feingold v. New York*,

366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Alfano v. Costello*,

294 F.3d 365, 374 [2d Cir. 2002]).

### c.    Retaliation

To state a prima facie claim for retaliation under Title VII, a plaintiff must allege facts

plausibly suggesting four elements: "(1) she engaged in a protected activity; (2) her employer

was aware of this activity; (3) the employer took adverse employment action against her; and (4)

a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).  "Section 704(a) of Title VII prohibits retaliation against two kinds of protected activity: 'participation' in investigations into discrimination and 'opposition' to conduct prohibited by the statute."  *Irons v. Bedford-Stuyvesant Cmty. Legal Servs.,* 13-CV-4467, 2015 WL 5692860, at *18 (E.D.N.Y. Sept. 28, 2015).  "Under the opposition clause, 'a plaintiff engages in a protected activity when he or she opposes an employment practice made unlawful under the provisions of Title VII.'"  *Cooper v. N.Y. Dep't of Labor*, 14-CV-0717, 2015 WL 5918263 at *6 (N.D.N.Y. 2015) (quoting *Kauffman v. Maxim Healthcare Servs., Inc.*, 04-CV-2869, 2006 WL 1983196, at *5 [E.D.N.Y. July 13, 2006]).  Notably, a plaintiff need not allege "that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute."  *Summa*, 708 F.3d at 126, (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 [2d Cir. 1998]).

"The required showing of an adverse employment action differs in the context of a retaliation claim from the required showing in a discrimination claim.  In the context of retaliation claims, adverse employment actions are defined broadly as employer actions that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Lampros v. Banco do Brasil, S.A.*, 10-CV-9576, 2012 WL 6021091, at *9 (S.D.N.Y. Dec. 4, 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); s*ee also Seale v. Madison Cnty.*, 929 F. Supp.2d 51, 75 (N.D.N.Y. Mar. 7, 2013) (Suddaby, J.) (holding that an employer moving an employee to a different building and

changing that employee's work hours are enough of an inconvenience to constitute an adverse employment action in the context of retaliation, but not in a discrimination claim).[13]

Finally, "[i]n Title VII retaliation claims, a plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence." *Humphrey v. Cnty. of Nassau*, 06-CV-3682, 2009 WL 875534, at *15 (E.D.N.Y. Mar. 30, 2009).

### d.      New York State Human Rights Law

"Because NYSHRL claims are subject to the same standard as Title VII claims, this Court will consider them together, unless otherwise noted." *Soloviev v. Goldstein*, 104 F. Supp.3d 232, 246 (E.D.N.Y. 2015) (internal quotation marks omitted).

## III.    ANALYSIS

### A.      Whether Plaintiff's Complaint States a Race Discrimination Claim Under Title VII or NYSHRL

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memoranda of law. (Dkt. No. 6, Attach. 2 [Def.'s Mem. of Law]; Dkt. No. 17 [Def.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

#### 1.      Whether Plaintiff Has Alleged Facts Plausibly Suggesting an Adverse Employment Action

As indicated above in Part III.B.1.a. of this Decision and Order, in a race discrimination claim, a plaintiff must establish that he suffered an adverse employment action.  Specifically, the Second Circuit has held as follows:

---

[13]      The Court will not analyze whether the denial of training was an adverse employment action in the context of a retaliation claim because Defendant no longer contests that fact in its reply memorandum of law.  (*See generally* Dkt. No. 17 [Def.'s Reply Mem. of Law].)

> A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A change that is materially adverse could consist of, inter alia, termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

*Morgan v. NYS Atty. Gen.'s Off.*, 11-CV-9389, 2013 WL 491525, at *5 (S.D.N.Y. Feb. 8, 2013)

(quoting *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 [2d Cir. 2000]).

Here, Plaintiff has alleged two adverse employment actions: (1) that Defendant denied him training; and (2) that Defendant constructively discharged him. For the reasons set forth below, the Court finds that Plaintiff has not alleged facts plausibly suggesting that either act constituted an adverse employment action.

### a.    Denial of Training

A denial of training is an adverse employment action "in circumstances where an employer denies necessary job training to an employee and the terms and conditions of his employment are thereby harmed." *Carpenter v. City of Mount Vernon*, 198 F. Supp.3d 272, 280 (S.D.N.Y. 2016). In other words, for a denial of training to be considered an adverse employment action, a plaintiff must allege that the denial "caused her opportunities for career growth or compensation to be affected." *Carpenter,* 198 F. Supp.3d at 280.

In *Carpenter*, the court held that a police department did not commit an adverse employment action when it denied "refresher" training courses to the plaintiff. *Id.* The plaintiff did not allege that the denials blocked her career growth or materially harmed her in any way. *Id.* at 280. Furthermore, according to the plaintiff's own allegations, she could still perform her duties as a police sergeant without the training. *Id.* As a result, the court granted the defendant's motion to dismiss the plaintiff's gender discrimination claim. *Id.* at 284.

Similarly, in *Hill v. Rayboy-Brauestein*, the court held an employer did not commit an adverse employment action against the plaintiff when it denied her training.  467 F. Supp.2d 336 (S.D.N.Y. 2006).  The plaintiff alleged that some training was denied to her and that the training she did receive was inadequate.  *Hill*, 467 F. Supp.2d at 336.  She further alleged that these actions caused her to fail a test at work.  *Id.*  However, the court found no admissible record evidence establishing that plaintiff "suffered a loss of pay, a change in responsibility, or any other adverse employment action because of her allegedly inadequate training."  *Id.* at 354.  As a result, the court granted partial summary judgment to the employer on the plaintiff's racial discrimination claim.[14]  *Id.* at 371.

However, in *Cruz v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, the court held that the employer committed an adverse employment action when it denied the plaintiff training and denied the employer's motion to dismiss plaintiff's gender discrimination claims.  13-CV-1335, 2014 WL 2547541 (S.D.N.Y. June 4, 2014).  The employer did not inform the plaintiff of a training opportunity that would have led to his promotion to adjunct instructor.  *Cruz*, 2014 WL 2547541, at *5.  This promotion would have been a "stepping-stone" to a full-time teaching position.  *Id.* at 5.

Here, unlike in *Cruz*, Plaintiff's Complaint does not allege how the denial of training adversely affected his career at MVCC.  The Complaint contains no factual allegations that plausibly suggest that the training was necessary for him to keep his job as an instructor at MVCC.  (*See generally* Dkt. No. 1 [Pl.'s Compl.].)  The Complaint also fails to allege facts

---

[14]     Although *Hill* involved a motion for summary judgment and not a motion to dismiss for failure to state a claim, the Court finds it instructive, because the undisputed material facts on a motion for summary judgment may be analogized to the assumed-to-be-true factual allegations of a complaint for a motion to dismiss for failure to state a claim.  *See e.g.*, *Fletcher v. Goord*, 07-CV-0707, 2008 WL 4426763, at *14 (N.D.N.Y. Sept. 25, 2008).

plausibly suggesting that the training would have led to a promotion, monetary gain, or an enrichment of his welding and/or teaching skills.  (*Id.*)  As stated above, a denial of training is an adverse employment action only "in circumstances where an employer denies necessary job training to an employee and the terms and conditions of his employment are thereby harmed." *Carpenter,* 198 F. Supp.3d 279-80.

Granted, in his Complaint, Plaintiff lists damages that he believes qualify as adverse employment actions, such as "the loss of his career at SUNY, lost wages, lost training, lost promotion opportunities, related fringe benefits, and other forms of compensation, as well as loss of career opportunity and advancement . . . ."  (Dkt. No. 1, at 8 [Pl.'s Compl.].)  However, this list of damages is speculative.[15]  In particular, there are no factual allegations plausibly linking the alleged lost training to those alleged adverse employment actions.  (*Id.*)  Instead, Plaintiff has simply "tender[ed] naked assertions devoid of further factual enhancement."  *Iqbal*, 129 S. Ct. at 1949.  In fact, it is unclear to the Court what "professional opportunity" the training was even for.  Indeed, Plaintiff does not use consistent terminology regarding the training: at various points in the Complaint and opposition memorandum of law, the training is referred to as a "Professional Opportunity Grant," "CWI Funding," "CWI Funding and related training," or simply "training."  (*See generally* Dkt. No. 1.)

---

[15]     The Court notes that, in the factually analogous case of *Casey v. Mabus,* the plaintiff also alleged that the denials of training she experienced were adverse employment actions because she suffered a loss of career growth.  878 F. Supp.2d 175, 184 (D.D.C. 2012).  However, the court held that such allegations were "pure speculation," because "plaintiff allege[d] no facts to demonstrate how these added trainings would have materially affected her employment."  *Casey,* 878 F. Supp.2d at 184.  The court explained, "[E]ven assuming that the denial of training opportunities made the plaintiff a suboptimal worker, such denial is still not an 'adverse employment action' under Title VII absent some concrete factual allegation that her training deficit imposed a tangible harm on the terms, conditions, or privileges of her employment."  *Id.*

In short, Plaintiff has not alleged facts plausibly suggesting that the training Defendant allegedly denied him was necessary to his career.  Thus, the Court cannot conclude that the alleged denial of training was so materially adverse that it changed the terms and conditions of Plaintiff's employment.

**b.      Constructive Discharge**

In a discrimination claim, a constructive discharge can serve as an adverse employment action.  *Ryle v. Rehrig Pac. Co.*, 19-CV-1478, 2020 WL 6196144, at *10 (N.D.N.Y. Oct. 22, 2020).  A "[c]onstructive discharge occurs where an 'employer, rather than discharging [an employee] directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily.'"  *Ryle*, 2020 WL 6196144 at *10 (quoting *Bader v. Special Metals Corp.*, 985 F. Supp.2d 291, 309 [N.D.N.Y. 2013]).  "Constructive discharge claims are often premised on the same type of non-discrete conduct underlying a hostile work environment claim, although the standard for constructive discharge is higher."  *Bader*, 985 F. Supp.2d at 309.  "[W]orking conditions are intolerable when, viewed as a whole, they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'"  *Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003) (quoting *Chertkova v. Connecticut Gen. Life Ins. Co.,* 92 F.3d 81, 89 [2d Cir. 1996]).  For example, "[a] demotion, particularly one that is accompanied by a significant loss of salary, prestige or responsibilities, or is otherwise 'humiliating,' may also, on its own, give rise to a constructive discharge claim." *Bader,* 985 F. Supp. 2d at 310 (citing *Pa. State Police v. Suders,* 542 U.S. 129, 133 [2004]).  An employee can also be constructively discharged when he or she resigns rather than face certain termination.  *Id.* at 310; *see also Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987) (finding that a supervisor's statement to plaintiff that he "would be fired at the end of the 90-day probationary period no matter what"

was sufficient evidence to deny employer's motion for summary judgment on a constructive

discharge claim).

Here, for the purpose of his Title VII and NYSHRL race discrimination claims, Plaintiff

has not alleged facts plausibly suggesting that he was constructively discharged.  Rather,

Plaintiff alleges merely Defendant denied him access to requested training on the account of his

race.  As stated above, standing alone, the denial of requested training as alleged in this

Complaint does not rise to the level of an adverse employment action.  Thus, Plaintiff's attempt

to rebrand his denial of training as a constructive discharge will not constitute an adverse

employment action.  Furthermore, the Complaint does not allege facts plausibly suggesting that

Plaintiff was demoted or suffered humiliation resulting from not receiving the training.  Nor does

any factual allegation in the Complaint plausibly suggest that Plaintiff resigned rather than face

an inevitable termination.  Therefore, the Court finds that Plaintiff has not alleged facts that

plausibly suggest an adverse action based on a constructive discharge.

> **2.      Whether Plaintiff Administratively Exhausted His Race
> Discrimination Claims to the Extent They Are Based on Events
> Occurring After September 11, 2017**

"A charge under [Title VII] shall be filed within one hundred and eighty days after the

alleged unlawful employment practice occurred . . . except that in a case . . . which the person

aggrieved has initially instituted proceedings with a State or local agency with authority to grant

or seek relief . . . upon receiving notice thereof, such charge shall be filed . . . within three

hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5.

"[B]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage

the prompt processing of all charges of employment discrimination."  *Nat'l R.R. Passenger Corp.*

*v. Morgan*, 536 U.S. 101, 109 (2002) (quoting *Mohasco Corp. v. Silver,* 447 U.S. 807, 826

[1980]).  "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'  A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."  *Nat'l R.R. Passenger Corp.*, 536 U.S. at 110.  "Each discrete discriminatory [or retaliatory] act starts a new clock for filing charges alleging that act."  *Id.* at 113.  However, in determining whether a plaintiff timely filed their EEOC charge, courts may consider equitable defenses including, estoppel, equitable tolling, and waiver.  *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 490 (2d Cir. 2018).  Thus, "the failure of a Title VII plaintiff to exhaust administrative remedies raises no jurisdictional bar to the claim proceeding in federal court."  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385 (2d Cir. 2015).

Finally, "'[d]ismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar,' such as lack of timeliness, 'as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (quoting *Staehr v. Hartford Fin. Servs. Grp.,* 547 F.3d 406, 425 [2d Cir. 2008]).  Thus, the Second Circuit has held "that the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense."  *Hardaway,* 879 F.3d at 491.

To the extent that Plaintiff's race-based discrimination claims stem from events occurring after September 11, 2017, Defendant argues that he has failed to exhaust his administrative remedies.  The Court agrees.  Although Plaintiff alleges that he was denied training after September 2017, the Report (which was based on a NYSDHR charge that Plaintiff filed on September 17, 2018, and which did not mention any denials of training after September 11,

2017) indicates that he never filed a charge regarding his denial of training at any time after

September 11, 2017. (*See generally* Dkt. No. 1 [Pl.'s Compl., Attach. 1].)[16]

Despite the Report's findings, Plaintiff maintains that at unspecified times and places

after September 2017, he continued to be denied training by unidentified MVCC employees.

However, these allegations of the denial of training occurring after September 11, 2017 are

conclusory and insufficient under the *Iqbal* and *Twombly* pleading standard. Under that

standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For example, in *Arrocha v. City Univ. of N.Y.,* the court granted the defendant's motion to

dismiss after the plaintiff's complaint contained vague allegations of retaliation and racial

discrimination. 878 F. Supp.2d 364 (E.D.N.Y. 2012), *aff'd*, 523 F. App'x 66 (2d Cir. 2013).

Among the defects of the vague complaint in *Arrocha*, the court found that "[the plaintiff's]

allegation that certain "less qualified" "fair skinned" candidates were hired over better qualified

black candidates is wholly conclusory and, as applied to him, is all but meaningless."[17] *Arrocha*,

---

[16]     The Court notes that the Report characterizes the denial of training as an adverse
employment action. However, the Court is not bound by the decisions and findings of state
administrative agencies. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 470 n.7 (1982) ("Nor
is it plausible to suggest that Congress intended federal courts to be bound further by state
administrative decisions than by decisions of the EEOC. Since it is settled that decisions by the
EEOC do not preclude a trial *de novo* in federal court, it is clear that unreviewed administrative
determinations by state agencies also should not preclude such review even if such a decision
were to be afforded preclusive effect in a State's own courts."). Moreover, after carefully
reviewing the record, the Court finds no reason to agree with the NYSDHR Report's conclusion
that Plaintiff suffered an adverse employment action through the denied training (or otherwise).

[17]     In *Arrocha*, previously, the plaintiff had sued the defendant on race discrimination and
retaliation claims. However, after a trial, the jury found for the defendant. *Arrocha v. City Univ.
of N.Y.,* 02-CV-1868, 2004 WL 594981 (E.D.N.Y. July 22, 2004). In his later action against the
defendant, "[t]he complaint essentially rehashes the same allegations that [the plaintiff] made,

878 F. Supp.2d at 371.  In this case, like in *Arrocha*, Plaintiff has failed to allege facts that plausibly suggest that Defendant denied him training after September 2017.  For example, Plaintiff neglects to provide facts such as how Plaintiff applied for or inquired about the training, the names of the people who denied him training after September 11, 2017, the manner in which he learned of the denials, or even the approximate dates of the denials.

Under *McDonnell Douglas,* a plaintiff need not allege a prima facie case for discrimination under Title VII.  Nevertheless, a pleading must "give the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).  Here, Plaintiff's general allegation that denials of training occurred after September 2017 do not give fair notice of his claim to Defendant.  Instead, Defendant can only glean from the Complaint that at some point within a 300-day window, nearly four years ago, one of its numerous employees denied Plaintiff training (or a grant).  Considering this vagueness, and the fact that Plaintiff's own exhibit appears to belie his conclusory allegation, the Court cannot conclude that Plaintiff has alleged facts plausibly suggesting that any denials of training occurred after September 2017.  *See Blue Tree Hotels Inv. Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (finding that allegation was "belied" by letters attached to the complaint).

The only training denials that Plaintiff plausibly alleged occurred more than one year before the dual filing of the EEOC and NYSDHR charges.  Therefore, Plaintiff's Title VII race-based discrimination claim and NYSHRL race-based discrimination claim occurred outside the EEOC's 300-day filing window, and the NYSDHR's one-year filing window, respectively.  Furthermore, the Court sees no reason that any equitable defenses should be applied.

---

and the jury rejected, in his 2002 lawsuit." *Arrocha*, 878 F. Supp.2d at 371.

For the above reasons, the Court finds that Plaintiff's Complaint fails to allege facts plausibly suggesting that he was subject to race discrimination in violation of Title VII and the NYSHRL.

### B.   Whether Plaintiff's Complaint States a Hostile Work Environment Claim

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 6, Attach. 2 [Def.'s Mem. of Law]; Dkt. No. 17 [Def.'s Reply Mem. of Law]).  To those reasons, the Court adds the following analysis.

As an initial matter, hostile work environment claims under the NYSHRL operate in the same fashion as those brought under federal law.  *See*, *supra*. Part II.B.1.b. of this Decision and Order (for a detailed discussion of Plaintiff's burden on a hostile work environment claim under Title VII).

### 1.   Whether Plaintiff Can Impute Liability onto Defendant for the Actions of Sorrentino or McCrary

"Beyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer."  *Gorzynski,* 596 F.3d at 103 (citing *Alfano v. Costello*, 294 F.3d 365, 373 [2d Cir. 2002]).  Where "a co-employee of the plaintiff is the alleged harasser, an employer will generally not be liable unless the employer either [1] provided no reasonable avenue of complaint or [2] knew of the harassment but did nothing about it." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).  "Whether the harassing conduct of a supervisor or coworker should be imputed to the employer is determined in accordance with common-law principles of agency."  *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995).

In instances where third parties are alleged to have been responsible for creating a hostile work environment, the Second Circuit has adopted, along with other circuits, the EEOC rules. *Summa*, 708 F.3d at 124.  The relevant EEOC rule states as follows:

> An employer *may* also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer . . . knows or should have known of the conduct and fails to take immediate and appropriate corrective action.  In reviewing these cases the [EEOC] will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.

29 C.F.R. § 1604.11 (emphasis added).  In other words, "the employer will be held liable only for its own negligence."  *Summa,* 708 F.3d at 124.

Using this guideline, some circuits have held that employers can be liable to employees who are harassed by third parties, but only if the employer failed to take reasonable action.  *See, e.g., Summa,* 708 F.3d 115 (finding a defendant not liable because it took proactive action to curb a third party student-athlete's harassment of plaintiff); *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062 (10th Cir. 1998) (stating that the defendant could be liable to the plaintiff for Title VII claims predicated on behavior from third party-customers); *Rodriguez-Hernandez v. Miranda-Velez,* 132 F.3d 848 (1st Cir. 1998) (holding that the defendant was liable to the plaintiff where a high-level executive that worked for the  defendant's largest customer harassed the plaintiff, and the defendant then fired the plaintiff at the behest of her harasser after she complained); *Hirschfeld v. N.M. Corrs. Dep't*, 916 F.2d 572 (10th Cir. 1990) (finding no basis for imputing liability onto the defendant where an inmate harassed the plaintiff, but the defendant addressed misconduct by stationing a temporary guard with the plaintiff and disciplining the inmate).

Courts have also found that liability can be imputed to an employer for student-on-teacher harassment, though these cases rarely occur.  *Peries v. New York City Bd. of Educ.*, 97-

CV-7109, 2001 WL 1328921, at *6 (E.D.N.Y. Aug. 6, 2001); *see also Plaza-Torres v. Rey*, 376 F. Supp. 2d 171 (D.P.R. 2005) (holding that, under Title VII, schools can be liable to teachers who are harassed by students, when the school fails to take appropriate action to stop the harassment); *accord Mongelli v. Red Clay Consol. Sch. Dist. Bd. of Educ.,* 491 F. Supp. 2d 467, 478 [D. Del. 2007]); *but see Andersen v. Rochester City Sch. Dist.*, 481 F. App'x 628 (2d Cir. 2012) (finding no hostile work environment where a student harassed the plaintiff off of school property, based on the facts that [i] the defendant took appropriate action, [ii] the plaintiff never had the student in class nor any interactions with on school property, and [iii] the harassment, although sexual in nature, was not motivated by the plaintiff's gender).

In the context of a hostile work environment claim, once a plaintiff establishes that a defendant had a duty to intervene, the plaintiff must show first that "a hostile environment existed and second that the . . . [employer] either provided no reasonable avenue of complaint or knew of the harassment and failed to take appropriate remedial action." *Peries*, 2001 WL 1328921, at *6. Put another way, "[a]n employer is responsible for acts of sexual harassment in the workplace where the employer . . . knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action." *McNally v. Posterloid Corp.*, 148 F. App'x 23, 25 (2d Cir. 2005) (quoting 29 C.F.R. § 1604.11[d]). "When determining whether an employer did 'nothing' about a co-employee's alleged harassment, courts analyze the *reasonableness* of the employer's response to the plaintiff's complaints." *Barton*, 2020 WL 4569465, at *9 (citing *Snell v. Suffolk Cnty.*, 782 F.2d 1094, 1104 [2d Cir. 1986]).

Finally, "the conduct of a [harasser] outside of school [or the workplace] is relevant only to the extent that the conduct actually creates a hostile *work environment.* The conduct of the [harasser] outside of school [or the workplace] must be so egregious that it actually alters the

29

conditions of the *school* [or work] *environment*." *Andersen v. Rochester City Sch. Dist.*, 09-CV-6259, 2011 WL 1458068, at *5 (W.D.N.Y. Apr. 15, 2011), *aff'd*, 481 F. App'x 628 (2d Cir. 2012).

### a.     Sorrentino

The Court finds no basis for imputing liability onto Defendant for the alleged behavior of Sorrentino for three reasons.  First, at the time of the alleged communications, there was no legal relationship between Defendant and Sorrentino.  This contrasts with the facts in the cases referenced above, in which the parties responsible for harassment were customers or inmates of the defendant.  Unlike a prison's control over an inmate or a business' control over a relationship with a customer, Defendant argues it had no control over Sorrentino's alleged actions that led to the communication being transmitted to Plaintiff's cell phone.  If anything, Sorrentino's alleged harassment of Plaintiff was a private dispute between those two parties, in which Defendant had no obligation to get involved.  It would be one thing if Sorrentino had gone onto MVCC's grounds and harassed Plaintiff in person.  Here, however, all of the alleged communications received by Plaintiff occurred remotely, outside the grasp of Defendant's control.  Additionally, as Defendant points out in its memorandum of law, none of the alleged communications were facilitated by MVCC, and "but-for Plaintiff's decision to bring his [cell] phone with him to work," the communications would have never entered his workplace.  (Dkt. No. 6, Attach. 2 [Def.'s Mem. of Law].)

Second, based on Plaintiff's allegations, the Court cannot conclude that a hostile work environment existed.  Specifically, Plaintiff has not alleged facts plausibly suggesting that the communications were abusive or caused him trauma.  Aside from Plaintiff's conclusory statement that he suffered "emotional distress" from the cumulative effects of Defendant's

actions and that he changed his personal cellphone number, nothing in the Complaint plausibly suggests how Plaintiff was harmed at *work* by Sorrentino and the communications.  As the Court explained earlier in this Decision and Order, the "standard [for a hostile work environment claim] has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 [2d Cir. 2014]).

In *Dowrich-Weeks v. Cooper Square Realty, Inc.*, the plaintiff's hostile work environment claim was dismissed because she failed to allege facts plausibly suggesting that she was materially disadvantaged at work and "that the workplace was permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."  11-CV-5966, 2012 WL 3826981, at *4 (S.D.N.Y. Sept. 4, 2012), *aff'd*, 535 F. App'x 9 (2d Cir. 2013) (citing *Alfano,* 294 F.3d at 373-74).  There, the plaintiff alleged that the defendant had changed her job responsibilities to such a degree that it amounted to a demotion, and that the defendant moved her to a cubicle from an office.  *Dowrich-Weeks,* 2012 WL 3826981 at *4. However, the court found that those actions were nothing more than "a mere inconvenience or the alteration of job responsibilities."  *Id.*  The Second Circuit affirmed the district court's ruling, finding that "[plaintiff's] allegations consist of several isolated incidents over the course of a two-year period that do not rise to the level of frequency or severity necessary to establish a hostile work environment claim."  *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 13 (2d Cir. 2013).

Granted, in this case, Plaintiff received communications with a greater frequency. However, Plaintiff has not alleged how the inconvenience of having to change his phone number

31

and suffer "emotional distress" affected his ability to perform his duties as an instructor at

MVCC.  Thus, as in *Dowrich-Weeks,* the Court finds that Plaintiff did not establish how the

terms and conditions of his employment were changed.

Third, despite not owing any duty to Plaintiff, when Defendant was notified of the

communications, it appears to have taken reasonable, prompt, and appropriate action, based on

the factual allegations of the Complaint.  Indeed, Defendant conducted an internal investigation,

and then forwarded its findings to the NYS Police, who conducted an investigation of its own.

In *Bolick v. Alea Grp. Holdings, Ltd.*, the Second Circuit held that an employer took reasonable

actions when, upon being informed of sexual harassment occurring between its employees, it

worked to limit the contact between the plaintiff and the harasser.  202 F. App'x 474 (2d Cir.

2006).  Similarly, in *Perry v. Ethan Allen, Inc.*, the Second Circuit affirmed a district court's

ruling that the defendant took "prompt and appropriate steps" when "it took immediate

responsive action by . . . investigating [the plaintiff's] complaint, confronting the employees she

accused, and warning them that the company would not tolerate harassment."  115 F.3d 143, 154

(2d Cir. 1997).  Furthermore, in *Perry*, the Second Circuit held that, even if some of the district

court's findings were "clearly erroneous, [they] are irrelevant in light of the court's additional

finding that the company took prompt and appropriate steps in response to [the plaintiff's]

complaint to management."  *Perry,* 115 F.3d at 153.

Here, just as in *Perry* and *Bolick*, the Court finds that, based on Plaintiff's own factual

allegations, Defendant took reasonable and prompt action when confronted with his complaints.

Thus, Defendant cannot be held liable for a hostile work environment.  Granted, the Report

suggests some circumstantial evidence was found linking the communications to Sorrentino (and

McCrary).  However, the Report also acknowledges that NYS Police never uncovered conclusive

32

evidence linking the communications to Sorrentino (and McCrary).  Even if the NYS Police had found conclusive evidence linking the communications to Sorrentino, Defendant had no ability to prevent the communications because Sorrentino was no longer employed by Defendant.  Therefore, Sorrentino's alleged conduct cannot impute liability onto Defendant for creating a hostile work environment in violation with Title VII or the NYSHRL.

### b.    McCrary

The Court also finds no basis for imputing liability onto Defendant for McCrary's alleged behavior.[18]  Although McCrary was a MVCC student at the time Plaintiff was receiving the alleged communications, Plaintiff never allegedly experienced any face-to-face harassment from McCrary.  In fact, the Complaint is silent on whether Plaintiff and McCrary had any in-person interactions.  Thus, like in *Andersen,* McCrary's alleged conduct was outside Plaintiff's workplace.  Because none of McCrary's conduct occurred at Plaintiff's workplace, in order for McCrary's behavior to constitute a hostile work environment, it must have been so egregious that it altered the terms and conditions of Plaintiff's workplace.  As discussed in Part III.B.1.a. of this Decision and Order, Plaintiff has failed to allege facts plausibly suggesting that the terms and conditions of his employment were changed by McCrary's conduct.  Aside from Plaintiff's conclusory allegation that the cumulative effects of Defendant's actions led to "emotional distress" and the need to change his personal cellphone number, there is nothing in the Complaint that plausibly suggests that communications linked to McCrary substantially altered Plaintiff's duties at MVCC.  Rather, they appear to have caused him a mere inconvenience.

---

[18]    In this part of the Decision and Order, the Court follows much of the same reasoning as contained above in Part III.B.1.a. of this Decision and Order.

Furthermore, even though Defendant did not owe a duty to Plaintiff, it investigated the communications and alerted the NYS Police to the communications that Plaintiff had been receiving.  Although Plaintiff suggests that Defendant failed to enforce its sexual harassment policy, it is unclear to the Court how MVCC's sexual harassment policy would have prevented the communications from occurring.

Therefore, McCrary's alleged conduct cannot impute liability onto Defendant for creating a hostile work environment in violation with Title VII or the NYSHRL.

**2.    Whether the Alleged Harassment Plaintiff Suffered Was Motivated by His Sex**

Title VII "protects men as well as women."  *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78, (1998).  Moreover, "nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex."  *Oncale,* 523 U.S. at 79. (quoting 42 U.S.C. § 2000e-2[a][1]).  A plaintiff may prove that same-sex harassment occurred on the basis of their sex in three ways: "(1) provide 'credible evidence that the harasser was homosexual;' (2) demonstrate that the harasser was 'motivated by general hostility to the presence of [employees of the same gender] in the workplace,' or (3) 'offer direct, comparative evidence about how the alleged harasser treated members of both sexes [differently] in a mixed-sex workplace.'"  *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 173 (2d Cir. 2012) (quoting *Oncale,* 523 U.S. at 80-81).  The Supreme Court has never held that "workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."  *Oncale,* 523 U.S. at 80.  Instead, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not

exposed." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 25, (1993) (Ginsburg, J., concurring).

Here, even if there was a basis for imputing liability onto Defendant, Plaintiff has not alleged facts plausibly suggesting that the harassment was motivated by his sex.[19]  Based on Supreme Court precedent, the only logical ways Plaintiff could satisfy his pleading burden is by either alleging that Defendant had a general hostility towards all male employees, or that Defendant treated its male employees differently than it treated its female employees.  *Oncale,* 523 U.S. at 80-81.  However, Plaintiff has failed to do so in two ways.  First, the Complaint never alleges facts plausibly suggesting a general hostility by Defendant towards all male instructors employed by MVCC.  Second, the Complaint does not allege facts plausibly suggesting that Defendant exposed him "to disadvantageous terms or conditions of employment to which . . . [females were] . . . not exposed."  *Harris*, 510 U.S. at 25.  Therefore, because Plaintiff has not alleged facts plausibly suggesting that Defendant's actions were motivated by his sex, the Court finds that Plaintiff has not alleged facts plausibly suggesting the presence of a hostile work environment.[20]

For all of these reasons, the Court finds that Plaintiff's Complaint fails to allege facts plausibly suggesting that he was subject to a hostile work environment in violation of Title VII and the NYSHRL.

---

[19]    The Court notes that, although Plaintiff has alleged the communications were sexual in nature, this factual allegation is insufficient to plausibly suggest that the harassment was based on of Plaintiff's sex.

[20]    Defendant repeatedly argues that Plaintiff's hostile work environment claim should be dismissed because Sorrentino and McCrary acted out of retribution for Plaintiff's act of reporting them for safety violations, not because of his sex.  However, this is irrelevant.  Sorrentino and McCrary are not litigants in this matter, and thus their motivations are irrelevant to the elements of Plaintiff's Title VII hostile work environment claim.  Instead, it is *Defendant's* motivation that is relevant to Plaintiff's hostile work environment claim.

**C.      Whether Plaintiff's Complaint States a Retaliation Claim**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memoranda of law. (Dkt. No. 6, Attach. 2 [Def.'s Mem. of Law]; Dkt. No. 17 [Def.'s Reply Mem. of Law].).  To those reasons, the Court adds the following analysis.

**1.      Whether Plaintiff Has Alleged Facts Plausibly Suggesting that the Denial of Training Was Caused by His Complaints to     Defendant About Sexual Harassment**

As noted above in Part II.B.1.c. of this Decision and Order, in a retaliation claim, a causal connection must exist between the alleged adverse action and the protected activity.  *Summa*, 708 F.3d at 125.  A plaintiff may establish a causal connection either "through direct evidence of retaliatory animus, or by circumstantial evidence."  *Humphrey,* 2009 WL 875534, at *15.

As an initial matter, the Court finds that Plaintiff has not alleged any direct, causal connection between when his complaint to Defendant about sexual harassment and his denial of training.  (*See generally* Dkt. No. 1 [Pl.'s Compl.].)  Granted, a plaintiff can also allege a causal connection between the adverse action and the protected activity by alleging a sufficiently close temporal relationship of the two.  *Summa*, 708 F.3d at 128 (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 [2d Cir. 2001]).  However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  *Humphrey,* 2009 WL 875534, at *15 (quoting *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 [2d Cir. 2006]).  The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too

attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.  This has allowed [the Second Circuit] to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases."  *Summa*, 708 F.3d at 128.  Still, the Supreme Court has held that even twenty months between a plaintiff's engagement in protected activity and the adverse employment action is insufficient on its own to prove causation.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Here, Plaintiff has not alleged facts plausibly suggesting a very close temporal proximity between the sexual harassment complaint made to MVCC and his subsequent denial of training. Instead, Plaintiff alleges only two general dates when he complained of sexual harassment: February 2017 and April 2018.  He was denied training in September 2017.  This roughly seven-month gap between first complaint and the denial of training is too long to plausibly suggest causation for purposes of his retaliation claim.  Plaintiff's second sexual harassment complaint made to MVCC, in April 2018, came after the alleged denial of training.  Hence, that protected conduct cannot be used to plausibly suggest any sort of temporal connection because it occurred after the alleged adverse employment action.  *See Leitgen v. Franciscan Skemp Healthcare, Inc.,* 630 F.3d 668, 676 (7th Cir. 2011) ("When a retaliation claim is based on suspicious timing, the order of events is even more important than the time between them; the theory doesn't work if the retaliatory act precedes the protected activity.") (internal citation omitted); *see also Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 434 (5th Cir. 2021) (holding that, when a defendant is unaware that a plaintiff engaged in protected conduct when the defendant takes an adverse employment action, the defendant cannot be liable for a retaliation claim).

Therefore, given the length of time between Plaintiff's first complaint of sexual harassment and the denial of training, and the fact that the second complaint of sexual harassment occurred after the denial of training, the Court finds no indirect, temporal connection between Plaintiff's sexual harassment complaints and the denial of training.

> ### 2. Whether Plaintiff Has Alleged Facts Plausibly Suggesting that the Denial of Training Was Caused by His Opposition to Racial Discrimination

Plaintiff's allegation that he was retaliated against for "opposing racial discrimination" is also insufficient.  (*See generally* Dkt. No. 1 [Pl.'s Compl.].)  Even when construed with the utmost of special liberality, the Complaint is devoid of factual allegations plausibly suggesting that Plaintiff did anything to oppose racial discrimination in his workplace.  (*Id.*)  Furthermore, as indicated above in Part III.A. of this Decision and Order, Plaintiff has not alleged facts plausibly suggesting claims for race discrimination.  Nor has Plaintiff alleged facts plausibly suggesting when this opposition to racial discrimination in the workplace even occurred.  For all of these reasons, the Court also cannot conclude that any direct, causal connection existed between Plaintiff's race or opposition to racial discrimination and the denial of training.

> ### 3. Whether Plaintiff Administratively Exhausted His Retaliation Claim

For the reasons set forth in Defendant's memoranda of law, as well as the reasons set forth above in Part III.A.2. of this Decision and Order, the Court finds that Plaintiff has failed to file a timely charge under Title VII and the NYSHRL.[21]  Thus, even if Plaintiff had alleged facts plausibly suggesting that the denial of training was causally related to his complaints to

---

[21]     The training denial serves as the basis for Plaintiff's race discrimination claim and retaliation claim.

Defendant about sexual harassment or his opposition to racial discrimination, he has failed to exhaust his administrative remedies, and his retaliation claims are barred.

For all of these reasons, the Court finds that Plaintiff has failed to state a claim for retaliation in violation of Title VII and the NYSHRL.

### D.      Whether the Claims Should be Dismissed with or Without Prejudice

In the Second Circuit, a dismissal for failing to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) is viewed as an adjudication "on the merits" of the action.  *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) ("[A] dismissal under Rule 12(b)(6) is a dismissal on the merits of the action–a determination that the facts alleged in the complaint fail to state a claim upon which relief can be granted."); *accord, Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.*, 387 F. Supp.2d 378, 380 (S.D.N.Y. 2005); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp.2d 468, 470 (S.D.N.Y. 2004); *Martens v. Smith Barney, Inc.*, 190 F.R.D. 134, 137 (S.D.N.Y. 1999).

As a result, a district court possesses the authority to dismiss an action with prejudice for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Spain v. Ball*, 928 F.2d 61, 62 (2d Cir. 1991) ("Observing that the complaint did not allege facts supporting a claim of race or gender discrimination, the district court dismissed Spain's Title VII claim but granted him leave to replead.  We believe the Title VII claim should have been dismissed with prejudice. . . ."); *Shockley v. Vt. State Colleges*, 793 F.2d 478, 480-81 (2d Cir. 1986) ("Appellant's pendent state contract claims were dismissed without prejudice while appellant's cause of action under Section 1983 was dismissed [with prejudice] for failure to state a claim."); *Winters v. Alza Corp.*, 690 F. Supp.2d 350, 357 (S.D.N.Y. 2010) ("A dismissal pursuant to Rule 12(b)(6) is, of course, a dismissal with prejudice."); *Martens*, 190 F.R.D. at 137

("Granting a motion under 12(b)(6) would dismiss a claim with preclusive effect . . . .").

This authority is especially present "[w]here it appears that granting leave to amend is unlikely to be productive." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denying leave to amend was not an abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").

Here, two facts lead the Court to believe that granting leave to amend would be unlikely to remedy Plaintiff's deficient claims.  First, despite the detail of Plaintiff's Complaint and exhibits (prepared by counsel), it conspicuously fails to allege the facts missing from his deficient claims.  Second, in his opposition memorandum of law, Plaintiff never suggests that any deficient claims might be able to be corrected in an Amended Complaint.  However, the Court is mindful that Plaintiff is a civil rights litigant (albeit not a *pro se* one) who is entitled to special solicitude,[1] and that the pleading deficiencies in question might be the result of the

---

[1]      *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (explaining, with regard to a complaint prepared by counsel, that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "is applied with greater force where the plaintiff alleges civil rights violations"); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (explaining that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "applies with greater force when the complaint is submitted pro se *or* the plaintiff alleges civil rights violations") (emphasis added).

inadvertent verbiage of counsel, rather than the lack of personal knowledge of Plaintiff and/or the strictures of Fed. R. Civ. P. 11(b).

For these reasons, before dismissing Plaintiff's claims with prejudice, the Court is inclined to give Plaintiff a reasonable period during which to correct the pleading defects in his claims. The Court will therefore suspend the dismissal of the Complaint for a period of thirty days (so as not to lose jurisdiction over this action through a dismissal of the Complaint now). If, within that thirty-day period, Plaintiff does not file a motion to amend in accordance with Fed. R. Civ. P. 15(a)(2) and N.D.N.Y. L.R. 15.1(a), the Complaint shall be dismissed with prejudice without further Order of this Court. If, however, Plaintiff files a motion to amend within that thirty-day period, the Court will extend its suspension of its dismissal of Plaintiff's Complaint until a decision is issued on his motion to amend. (If the motion to amend is granted, the Amended Complaint of course shall supersede the Complaint in all respects.)

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 6) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) **shall be <u>DISMISSED</u> with prejudice** and without further Order of this Court **unless**, **within THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files a **motion to amend** his Complaint in accordance with Fed. R. Civ. P. 15(a)(2) and N.D.N.Y. L.R. 15.1(a).

Date:   September 30, 2021
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge